UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| PAMELA WOODCOX, EUGENE WOODCOX, MICHELLE CONTRERAS, and LOUIS CONTRERAS,<br><br>          Plaintiffs,<br>v.<br><br>VOLKSWAGEN GROUP OF AMERICA, INC., D/B/A VOLKSWAGEN OF AMERICA, INC.; VOLKSWAGEN AG; ROSEVILLE VOLKSWAGEN, LLC; THE NIELLO COMPANY; and DOES 1 through 50, inclusive,<br><br>          Defendants. | CIV. NO. 2:17-215 WBS DB<br><br>MEMORANDUM AND ORDER RE: MOTION TO REMAND AND MOTION TO STAY |

----oo0oo----

    Plaintiffs Pamela Woodcox, Eugene Woodcox, Michelle Contreras, and Louis Contreras brought this action in the Sacramento County Superior Court against defendants Volkswagen Group of America, Inc.; Volkswagen AG; Roseville Volkswagen, LLC; and the Niello Company for damages arising out of defendants' alleged installation of illegal "defeat devices" in certain

1

1  automobiles to avoid detection and enforcement of Environmental
2  Protection Agency ("EPA") and state vehicle emissions
3  regulations.  Defendants removed the action to this court on
4  January 31, 2017.  Presently before the court are plaintiffs'
5  Motion to Remand and defendants' Motion to Stay this case pending
6  transfer to the Northern District of California pursuant to 28
7  U.S.C. § 1407.
8  I.  Factual and Procedural History
9          In 2015, the EPA and the California Air Resource Board
10 ("CARB") issued Notices of Violation to Volkswagen Group of
11 America for alleged violations of the federal Clean Air Act
12 ("CAA").  (Compl. ¶¶ 73-74 (Docket No. 1-2).)  Volkswagen
13 allegedly installed illegal software-based "defeat devices" in
14 certain diesel vehicles, which "reduce[] the effectiveness of the
15 emission control systems" and produce "compliant emission
16 results" only "when the vehicle was being tested for compliance
17 with EPA emissions standards."  (Id. ¶¶ 31, 68-69, 72-73.)  As a
18 result, Volkswagen's vehicles allegedly emitted levels of
19 pollutants up to forty times above EPA- and CARB-compliant levels
20 during normal operation.  (Id. ¶ 69.)
21         Volkswagen's actions resulted in well over 1,000
22 actions across the United States for their sale of purportedly
23 "clean diesel" vehicles containing these defeat devices.  The
24 Judicial Panel on Multidistrict Litigation ("JPML") has
25 consolidated over 1,200 cases of these cases into a federal
26 multidistrict litigation in the United States District Court for
27 the Northern District of California ("MDL court").  In re:
28 Volkswagen Clean Diesel Mktg., Sales Practices, and Prod. Liab.

Litig., MDL No. 2672, Conditional Transfer Order 85 (J.P.M.L. Feb. 21, 2017).

Plaintiffs filed the instant action in state court, incorporating part of the consolidated consumer class action complaint in the MDL court and bringing separate California state law claims.  Plaintiffs allege the following causes of action: (1) violation of California Unfair Competition Law ("UCL"); (2) violation of California False Advertising Law; (3) breach of express warranty under the Song-Beverly Consumer Warranty Act; (4) violation of the California Consumer Legal Remedies Act; (5) fraud by concealment; and (6) negligent misrepresentation. (Compl.)  Defendants subsequently removed the case to federal court on the basis of federal question jurisdiction.  (Docket No. 1.)

On February 6, 2017, plaintiffs filed a motion to remand the case to state court for lack of subject matter jurisdiction, arguing that the case implicates only California law.  (Mot. to Remand (Docket No. 5-2).)  Defendants, anticipating transfer of this case to the MDL court, then moved to stay this action.  (Mot. to Stay (Docket No. 6-1).)  On February 10, 2017, the JPML issued a Conditional Transfer Order ("CTO") indicating its decision that this case should be transferred to the MDL court.  (Oswell Decl., Ex. B at 2 (Docket No. 12-3).)  Plaintiffs filed a notice of opposition to the CTO and then moved to vacate the CTO pursuant to J.P.M.L. Rule 7.1.

II. Discussion

    A.   Order of Pending Motions

As an initial matter, the court must determine which

1   motion--plaintiffs' motion to remand or defendants' motion to
2   stay--to entertain first.  Generally, jurisdiction is a
3   preliminary matter that should be resolved before all others.
4   Smith v. Mail Boxes, Etc., 191 F. Supp. 2d 1155, 1157 (E.D. Cal.
5   2002) ("[J]urisdictional issues should be resolved before the
6   court determines if a stay is appropriate.").  However, the
7   approach changes when deference to an MDL court will further "the
8   uniformity, consistency, and predictability in litigation that
9   underlies the MDL system."  Conroy v. Fresh Del Monte Produce
10  Inc., 325 F. Supp. 2d 1049, 1053 (N.D. Cal. 2004).  The MDL court
11  can resolve a motion to remand when "the motion raises issues
12  likely to arise in other actions pending in [the consolidated
13  action]."  Id.; see also In re Vioxx Prods. Liab. Litig., 360 F.
14  Supp. 2d 1352, 1354 (J.P.M.L. 2005) ("[M]otions to remand . . .
15  can be presented to and decided by the transferee judge.").

16          Several courts, including this one, have applied the
17  Conroy methodology when considering simultaneous motions to
18  remand and stay in the MDL context.  See, e.g., Beshear v.
19  Volkswagen Grp. of Am., Inc., Civ. No. 16-cv-27-GFVT, 2016 WL
20  3040492, at *2-6 (E.D. Ky. May 25, 2016); Leeson v. Merck & Co.,
21  Inc., Civ. No. 2:05-2240 WBS PAN, 2006 WL 3230047, at *2-4 (E.D.
22  Cal. Jan. 27, 2006).  "First, the court should [scrutinize] the
23  merits of the motion to remand" and consider it in full if "this
24  preliminary assessment suggests that removal was improper."
25  Conroy, 325 F. Supp. 2d at 1053.  Second, "if the jurisdictional
26  issue appears factually or legally difficult, the court should
27  determine whether identical or similar jurisdictional issues have
28  been raised in other cases that have been or may be transferred

to the MDL proceeding." Id. "[I]f the jurisdictional issue is both difficult and similar or identical to those in cases transferred or likely to be transferred, the court should stay the action." Id.; see also Meyers v. Bayer AG, 143 F. Supp. 2d 1044, 1048-49 (E.D. Wis. 2001).

Applying this methodology, the court finds that a stay is proper. First, in light of the defendants' subject matter jurisdiction arguments, "removal was not plainly improper." See Leeson, 2006 WL 3230047, at *3. Defendants removed this case to federal court, arguing plaintiffs' state law claims necessarily require the resolution of substantial federal law issues. Federal question jurisdiction exists over state law claims "if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." Gunn v. Minton, 133 S. Ct. 1059, 1065 (2013) (citing Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 314 (2008)).

"When a claim can be supported by alternative and independent theories--one of which is a state law theory and one of which is a federal law theory--federal question jurisdiction does not attach because federal law is not a necessary element of the claim." Rains v. Criterion Sys., Inc., 80 F.3d 339, 346 (9th Cir. 1996). Some of plaintiffs' claims do not necessarily raise federal law questions. Plaintiffs allege, for example, that defendants violated the UCL by violating federal and state emissions laws. (Compl. ¶ 90.) Thus, the UCL claim may, but does not necessarily, turn on federal law issues. However, it is

not plainly clear from the Complaint that there are theories for each claim that do not necessarily require resolution of a federal law issue.

Additionally, the entire action arose out of the EPA's notice of violation by defendants for their use of "defeat devices." (Id. ¶¶ 1-2.) The Complaint repeatedly alleges that defendants sold vehicles exceeding emissions standards using "defeat devices"--a term defined by federal law--which is a substantial issue in this litigation. See 40 C.F.R. § 1045.115(g) ("A defeat device is an auxiliary emission control device that reduces the effectiveness of emission controls under conditions that the engine may reasonably be expected to encounter during normal operation and use."). The Complaint also specifically incorporates many portions of the amended consolidated consumer class action complaint in the MDL court, further complicating this jurisdictional issue. (See Compl. ¶ 1.) Lastly, defendants argue that allowing the court to hear this issue would not disrupt the federal-state balance approved by Congress because Congress desires uniform application of environmental regulations and the CAA. See Beshear, 2016 WL 3040492, at *5.

Plaintiffs argue that no federal issue is "actually disputed" because Volkswagen's CEO admitted to the use of software that defeats emissions tests while testifying before Congress. This argument is weakened by the fact that the same alleged factual scenario has led to litigation across the country. Many courts across the country have evaluated this issue, with outcomes on both sides. Compare id. at *4 (finding

6

there may be disputed federal issues and thus a stay is proper under Conroy), with Springsted v. Valenti Motors, Inc., 2016 WL 2977235, at *3 (D. Conn. May 20, 2016) (finding it is unclear whether there is an actual dispute and thus remand is proper).

It is unclear at this juncture to what extent plaintiffs' claims depend on allegations of fraud and misrepresentations rather than a disputed issue of federal law. See Beshear, 2016 WL 3040492, at *4.  Since this preliminary assessment is only a limited inquiry, defendants' federal question jurisdiction arguments are not clearly baseless.  See Leeson, 2006 WL 3230047, at *3.

Second, the jurisdictional issue here is similar to jurisdictional issues in cases already transferred to the MDL court.  Several cases already transferred to the MDL court contain the precise jurisdictional question at issue here-- whether plaintiffs' state law claims for relief are based upon a disputed issue of federal law.  See, e.g., Hess v. Volkswagen Grp. of Am., Inc., Civ. No. 2:16-cv-668-KOB, 2016 WL 3483166 (N.D. Ala. June 27, 2016).  For example, the JPML, in its final transfer order for 41 actions, noted that 40 cases had pending motions for remand.  (Hogberg Decl., Ex. M (Docket No. 6-15).) Furthermore, several related cases in California district courts have been stayed and subsequently transferred while motions for remand were pending on the same issue of federal question jurisdiction.  See, e.g., Ackers v. Volkswagen Grp. of Am., Inc., Civ. No. 2:16-1942 JAM CKD (E.D. Cal. Aug. 26, 2016), ECF No. 5; Alvarado v. Lasher Auto Grp., Civ. No. 2:16-979 (June 14, 2016), ECF No. 12; Wilke v. Volkswagen of Downtown L.A., Civ. No. 2:16-

3087 DOC SP (C.D. Cal. June 6, 2016), ECF No. 18.

Further, this case shares "common question[s] of fact" with other cases already transferred to the MDL court. 28 U.S.C. § 1407(a). Plaintiffs here, like plaintiffs in the MDL action, are private consumers. The cases all involve the key question related to the defendants' alleged use of "defeat devices." Finally, there are many cases brought by California consumers under California state law. See, e.g., Alvarado, Civ. No. 2:16-979, ECF No. 12. Consequently, "identical or similar jurisdictional issues have been raised in other cases that have been or may be transferred to the MDL proceeding." Conroy, 325 F. Supp. 2d at 1053.

Because jurisdiction is a threshold issue and the MDL court has many consumer actions bringing state law claims with pending motions to remand, the MDL court will necessarily need to rule on the motions to remand. The Conroy methodology suggests that the court should rule upon defendants' motion to stay.

B.  Motion to Stay

The power to stay proceedings "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. N. Am. Co., 299 U.S. 248, 254 (1936). Moreover, a stay and deference to the MDL court are particularly appropriate when the parties contest issues that are "likely to arise in other actions pending" in the consolidated proceedings. Conroy, 325 F. Supp. 2d at 1053. In evaluating whether to stay proceedings, the court is concerned with balancing competing interests and should consider: "(1)

8

potential prejudice to the non-moving party; (2) hardship and inequity to the moving party if the action is not stayed; and (3) the judicial resources that would be saved by avoiding duplicative litigation if the cases are in fact consolidated." Rivers v. Walt Disney Co., 980 F. Supp. 1358, 1360 (C.D. Cal. 1997); see also Landis, 299 U.S. at 254-55; CMAX, Inc. v. Hall, 300 F.2d 265, 268 (9th Cir. 1962).

First, as to prejudice to plaintiffs, plaintiffs argue that a stay will place their case in a "procedural limbo" in the MDL court with hundreds of other cases where they will be unfairly prejudiced by a delay in proceedings. (Pls.' Opp'n 8:11-18 (Docket No. 14).)  This argument is weakened by the fact that there are several other cases consolidated in the MDL court from other federal California district courts that have pending motions to remand on the exact same issue.  Plaintiffs would likely be able to have their motion to remand heard at the same time as the other California plaintiffs' motions.

The court is mindful that there may be some delay or inconvenience to plaintiffs if a stay is granted.  "But if this case is transferred to the MDL, the efficiencies gained through the MDL will benefit all parties."  Lessard v. Volkwagen Grp. of Am., Inc., Case No. 16-cv-0754 (WMW/TNL), 2016 WL 3004631, at *2 (D. Minn. May 24, 2016).  Granting a stay will not preclude plaintiffs from seeking remand in the MDL court, and plaintiffs may very well benefit from the perspectives of plaintiffs' counsel in other cases with pending motions to remand.  The stay may also be brief if the JPML grants plaintiffs' motion to vacate the conditional transfer of this case to the MDL court.  Further,

other courts have stayed cases pending transfer to an MDL court when "plaintiffs have not demonstrated any prejudice in the event of a stay except the slight delay in deciding the remand motion." See, e.g., Med. Soc'y of N.Y. v. Conn. Gen. Corp., 187 F. Supp. 2d 89, 92 (S.D.N.Y. 2001).

Second, the potential hardship and inequity to defendants weighs heavily in favor of a stay.  If this court considers and denies plaintiffs' motion to remand, plaintiffs may have a second chance before the MDL court if the case is subsequently transferred because the MDL court will necessarily need to address motions to remand in the several cases already transferred.  "[Defendants] should not have to defend against the same motion repeatedly brought by the same plaintiff[s]."  See Leeson, 2006 WL 3230047, at *4.  Conversely, if this court determines that defendants improperly removed this case but the MDL court holds removal was proper in the other California cases, defendants will be stuck with a decision in this case that is inconsistent with the majority of other similar cases involving purely California state law claims.  See A.D. v. Pfizer, Inc., Case No. 13-cv-2466-JST, 2013 WL 3889159, at *2 (N.D. Cal. July 26, 2013) ("On the other hand, Defendants would face the risk of unnecessary proceedings and inconsistent rulings on recurring questions of law and fact if the case is not stayed.").  Yet defendants would not be able to appeal an order granting remand. Kunzi v. Pan Am. World Airways, Inc., 833 F.2d 1291, 1293 (9th Cir. 1987) ("Remand orders . . . are immune from appellate review . . . even if the district court's jurisdictional decision was erroneous.").

1            Denying a stay will also require defendants to
2   potentially respond to any other pretrial matters raised by
3   plaintiffs that the MDL court could decide.  Each pretrial matter
4   adjudicated by this court increases the risk of inconsistent
5   rulings and prejudices defendants' ability to defend themselves
6   in the actions with similar allegations and issues.  See Pfizer,
7   2013 WL 3889159, at *2.
8            Third, judicial economy weighs in favor of a stay.  The
9   goal of the MDL court is to coordinate pretrial management of
10  actions with common facts.  28 U.S.C. § 1407.  A stay pending the
11  JPML's decision to consolidate this action in the MDL court
12  increases efficiency and consistency, especially "when the
13  pending motions raise issues likely to be raised in other cases."
14  Manual for Complex Litigation (Fourth) § 22.35; see Meyers, 143
15  F. Supp. 2d at 1053 ("[J]udicial economy clearly favors a stay"
16  when the "other cases present the same or a similar issue.").
17           There are a vast number of cases already consolidated
18  in the MDL court, including cases with pending motions to remand
19  based on lack of federal question jurisdiction.  While the MDL
20  court has cases from many different states, which implicates
21  different state laws, there are several cases before the MDL
22  court that concern the precise issue here--whether California
23  state law claims against defendants necessarily require the
24  resolution of a federal law issue.  Granting a stay pending
25  resolution by the MDL court prevents repetitive decisions and the
26  use of excessive and unnecessary judicial resources.  See Rivers,
27  980 F. Supp. at 1360-61.  Finally, the MDL court has presided
28  over the multidistrict litigation for well over a year and

11

1  already established a procedure for many aspects of the MDL,
2  including the filing and briefing of motions for remand.  (See
3  Hogberg Decl., Ex. C (Docket No. 14-4).)  The already-set
4  procedures and the MDL court's extensive knowledge of the
5  underlying facts favor granting a stay.
6        If this case is transferred to the MDL court, the MDL
7  court will potentially be in a better position to address
8  plaintiffs' motion to remand and any other pretrial matters.
9  "Given the fact that hundreds of similar cases have been
10 transferred already, and the likelihood of many more cases being
11 in a similar procedural posture, the interests of judicial
12 economy and the threat of inconsistent rulings outweighs any
13 potential prejudice to the [plaintiffs]."  Beshear, 2016 WL
14 3040492, at *8.  Accordingly, the court will grant defendants'
15 motion to stay the proceedings pending transfer of this action to
16 the MDL court.
17        IT IS THEREFORE ORDERED that defendants' Motion to stay
18 be, and the same hereby is, GRANTED.
19        IT IS FURTHER ORDERED that plaintiffs' Motion to remand
20 be, and the same hereby is, DENIED WITHOUT PREJUDICE.
21 Dated:  March 7, 2017

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

12